# United States Court of Appeals
# for the Fifth Circuit

―――――――――

No. 22-50276
Summary Calendar

―――――――――

United States Court of Appeals
Fifth Circuit

**FILED**
September 21, 2023

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

TRAVIS WAYNE VAVRA,

*Defendant—Appellant*.

―――――――――――――――――――――――

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:20-CR-65-1

―――――――――――――――――――――――

Before ELROD, OLDHAM, and WILSON, *Circuit Judges*.

PER CURIAM:[*]

Travis Wayne Vavra was convicted by a jury of one count of transportation of a minor (R.S.) with intent to engage in criminal sexual activity, beginning in September 2015 and continuing through June 2019, and one count of possession of child pornography involving a prepubescent minor on or about December 6, 2019, and he was sentenced to life imprisonment.

―――――――――――――――――

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

The child pornography charge pertained to material discovered on Vavra's black Samsung cellphone which was found in his motel room shortly after his arrest. Prior to trial, Vavra filed a motion to sever the child pornography charge from the transportation of a minor charge, alleging misjoinder under Federal Rule of Criminal Procedure 8(a) and prejudicial joinder under Federal Rule of Criminal Procedure 14. The district court denied the motion. The district court also denied Vavra's pretrial request to exclude proposed testimony from his two step-grandsons about information they observed on Vavra's cellphone.

The Government presented evidence that in 2015, Vavra, a truck driver, paid R.S.'s mother to allow R.S., who was nine years old at the time, to begin traveling with Vavra on out of state trips. R.S. rode in Vavra's truck on many trips from 2015 through the summer of 2019 and sometimes stayed at Vavra's son's house and at his hotel room after he moved out of the house. In the fall of 2019, R.S. informed his father that Vavra had sexually abused him. At trial, R.S. testified, in detail, that Vavra first abused him on a trip in the fall of 2015 and continued to sexually abuse him on subsequent trips, at Vavra's son's house, at Vavra's sister's house, and in Vavra's hotel room. The abuse included oral sex and anal penetration. Vavra also showed R.S. pornographic videos on his phone involving children who appeared to be between the ages of 3 and 14. A nurse testified that she performed a forensic sexual assault examination of R.S. after his outcry and determined that he had sustained injuries consistent with "trauma related to penetration." Text messages revealed that after R.S. accused Vavra of sexual assault, Vavra instructed him to delete information from his phone.

Vavra's step-grandsons, Aaron and Nathan, testified that Vavra also molested them and that they had observed pictures of nude children while using Vavra's cellphone. Aaron explained that he took a trip in Vavra's truck when he was 12 or 13 years old and that on the trip, Vavra groped his genitals.

Aaron testified that sometime around 2018, he saw a couple of pictures of nude 6- to-12-year-old boys and a toddler urinating on Vavra's phone; he also explained that the phone's search history included an entry for "boys in bathing suits." Nathan testified that when he was about 13 years old, Vavra came into his bedroom and touched his genitals on multiple occasions. Nathan also observed multiple pictures of nude five-to six-year-old boys and boys modeling underwear, but he testified that the pictures were "not sexual-like."

When Vavra was arrested, FBI agents discovered pictures and videos depicting child sex abuse in a subfolder on Vavra's black Samsung Galaxy phone. At the time of his arrest, Vavra also admitted to posting index cards addressed to parents and boys offering money for children to travel with him in his truck; agents discovered materials to make the cards in Vavra's hotel room and truck. At trial, Vavra testified on his own behalf. He denied sexually abusing R.S. or touching Aaron or Nathan, and he claimed that he never downloaded or viewed child pornography.

On appeal, Vavra argues that (1) the district court erred in denying his motion to sever the two counts; (2) the district court abused its discretion in allowing testimony from Aaron and Nathan about the material they observed on his cellphone; and (3) the record is devoid of evidence that he knowingly possessed the child pornography found on his cellphone after his arrest.

We review whether charges were properly joined under Rule 8(a) de novo, subject to a harmless error analysis. *United States v. Huntsberry*, 956 F.3d 270, 287 (5th Cir. 2020). If the initial joinder is proper, we review the district court's denial of the motion to sever under Rule 14(a) for abuse of discretion. *Id.*

Rule 8(a) allows two or more offenses to be charged together if they "are of the same or similar character, or are based on the same act or

transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. PROC. 8(a). Even if counts are properly joined under Rule 8(a), the district court may grant a severance under Rule 14(a) if the joinder "appears to prejudice a defendant or the government." FED. R. CRIM. PROC. 14(a); *see Huntsberry*, 956 F.3d at 287. Error under either rule is only reversible if there is "specific and compelling prejudice" that resulted in an unfair trial. *United States v. Ballis*, 28 F.3d 1399, 1408 (5th Cir. 1994); *United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995).

Even if we assume that the two charges were improperly joined, Vavra has not shown that he suffered specific and compelling prejudice. *See Ballis*, 28 F.3d at 1408; *Bullock*, 71 F.3d at 174. Vavra complains about delay in his trial setting for the transportation charge, but he fails to point to any facts or authority indicating that the joinder violated his speedy trial rights. Moreover, no prejudice inures to a defendant where "a severance of counts would not result in a segregation of evidence." *Ballis*, 28 F.3d at 1408-09. Here, had Vavra been tried separately on the transportation and child pornography counts, evidence of each offense would have been admissible in the trial for the other. *See* FED. R. EVID. 404(b); FED. R. EVID. 414; *Ballis*, 28 F.3d at 1408-09. Further, the district court instructed the jury that it was required to consider the evidence pertaining to each count separately, that its verdict on one count should not affect its verdict on the other, and that Vavra was only on trial for the crimes alleged in the indictment, not for any past similar acts. Because juries are generally presumed to follow their instructions, the district court's instructions cut against a finding of unfair prejudice. *See United States v. Hickerson*, 489 F.3d 742, 746 (5th Cir. 2007).

As for Vavra's challenge to Aaron and Nathan's testimony about what they observed on his phone, we need not decide whether the testimony was admissible or whether it was unduly prejudicial because its admission was harmless. *See United States v. Gutierrez-Mendez*, 752 F.3d 418, 423-24 (5th

Cir. 2014). The Government has the burden of establishing harmlessness beyond a reasonable doubt. *United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008). An error is harmless unless it affects the defendant's substantial rights. FED. R. CRIM. P. 52(a). Reversal is required if "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction." *United States v. Flores*, 640 F.3d 638, 643 (5th Cir. 2011) (internal quotation marks and citation omitted). We have held that the erroneous admission of extrinsic evidence is harmless where there was considerable or ample other evidence of the charged crime, *see id.*; *McCall*, 553 F.3d at 829, and also where "the impermissibly admitted evidence was too weak and benign to give us concern that it affected the verdict," *Gutierrez-Mendez*, 752 F.3d at 427.

Here, there was considerable and ample evidence—excluding the challenged testimony—demonstrating that Vavra was sexually interested in children, that he transported R.S. in order to sexually abuse him, and that he possessed the child pornography on his black Samsung Galaxy phone. *See Flores*, 640 F.3d at 643; *McCall*, 553 F.3d at 829. Relative to the other evidence presented, Aaron and Nathan's testimony about what they observed on Vavra's phone was not particularly damaging to Vavra's case especially given that the witnesses did not testify that they saw anything overtly sexual. *See Gutierrez-Mendez*, 752 F.3d at 427. Accordingly, any error in the admission of this testimony did not affect Vavra's substantial rights. *See id.*

Finally, because Vavra failed to renew his motion for acquittal at the close of all the evidence, he did not properly preserve his challenge to the sufficiency of evidence supporting his knowing possession of child pornography. *See United States v. Smith*, 878 F.3d 498, 502-03 (5th Cir. 2017). Thus, he must demonstrate "a manifest miscarriage of justice, which occurs only where the record is devoid of evidence pointing to guilt or the

evidence is so tenuous that a conviction would be shocking." *Id.* at 503 (internal quotation marks and citations omitted).

Although there was evidence indicating that Vavra allowed others to use his cellphone at times, the black Samsung Galaxy phone where the child pornography was discovered belonged to Vavra and was found in his hotel room. R.S. testified that Vavra showed him pornography on his black Samsung Galaxy phone, and there is no indication that expert knowledge was required to access the folder where the videos were downloaded. Further, the testimony regarding Vavra's alleged acts of sexual molestation demonstrated his sexual interest in children. *See United States v. Terrell*, 700 F.3d 755, 766 (5th Cir. 2012). In light of this evidence, the jury was free to reject any plausible alternative explanation that someone else may have used Vavra's phone to download the videos. *See United States v. Woerner*, 709 F.3d 527, 537 (5th Cir. 2013). Vavra therefore fails to show that the record was devoid of evidence that he knowingly possessed the child pornography discovered on his phone. *See Smith*, 878 F.3d at 503.

AFFIRMED.